THE SUFFERN.

(Circuit Court of Appeals, Second Circuit. February 15, 1916.)

No. 122.

Collision ☞95(2)—Tug and Ferryboat Meeting—Sudden Change of Course.

A tug, intending to cross the North River from the New Jersey side, but proceeding up practically parallel with the shore not far off the pier heads, *held*, on conflicting evidence, solely in fault for collision with a meeting ferryboat for swinging to starboard across the bow of the ferry boat when they were quite near each other.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. ☞95(2).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Abraham J. Balaban, owner of the steam tug Robert White, against the ferryboat Suffern; the Erie Railroad Company, claimant. Decree for claimant, and libelant appeals. Affirmed.

This cause comes here upon appeal from a decree holding libelant's steam tug Robert White solely responsible for a collision with claimant's ferryboat Suffern.

James J. Macklin, of New York City (James J. Macklin and De Lagnel Berier, both of New York City, of counsel), for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (James K. Symmers and Earle Farwell, both of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The collision occurred on January 14, 1914, about 7 a. m., in the North River; the weather being clear and the tide about the first of the flood. The Suffern was bound from her slip at Twenty-Third street, Manhattan, for the Erie Railroad ferry slip, Jersey City. The tugboat was bound from Port Liberty coal docks to Christopher street, Manhattan; she proceeded up along the Jersey shore at first about 200 feet off the pier heads, edging further out until, when about abreast of, or a little above, the Erie ferry, she swung over to starboard for her destination at Christopher street. The collision occurred because the Suffern also swung towards midriver; the starboard bow of the ferryboat struck the port side of the tug.

The accounts of the navigation given by the respective parties are diametrically opposed. From it, however, we have reached the conclusion that until the time when navigation mutually to each other began the tug was still proceeding up river; she may have been edging out a bit from the Jersey piers, but her course was still substantially up river; the course of the Suffern was substantially down river; we see no warrant anywhere in the testimony for finding crossing courses and the application of the starboard hand rule. The vessels were approaching substantially on opposite courses; they were under the first rule.

All the witnesses from the White say that the Suffern was nearer the Jersey shore than the White; that both vessels were approaching on courses which would, if unchanged, enable them to pass port to port with abundant clearance. If this were the situation the navigation of the White was entirely proper; she blew one whistle and turned still further to starboard.

The witnesses from the Suffern, however, describe a different situation; they say the White was nearer to the Jersey shore than the Suffern was; that each bore on the starboard bow of the other; that if courses were prolonged they would have passed each other starboard to starboard with a clearance of 400 feet. If this be so, there was no obligation for either to pass on the port side of the other, and it

was proper for either vessel to sound the appropriate signal and haul over further to port, and the Suffern was not in fault for sounding two whistles and going still further to port.

It would seem more likely that the tug, which was going to New York, should have ported to change her course than that the ferryboat, which was coming from New York, should have gone so close to the Jersey shore before she headed down river that it would be necessary for her to swing out towards mid-river in order to make her round to so as to enter her slip. In this direct conflict of testimony, the District Judge naturally resorted to the independent witnesses from the two other tugs, who were in a position to see—especially the master of the Meta, which was coming down river about 200 feet behind the Suffern and 200 feet nearer the Jersey shore. This witness testified that before she swung the White was coming up river and was not only on the starboard hand of the ferryboat, but also on the starboard hand of the Meta although the latter was 200 feet nearer than the Suffern to the Jersey shore.

Judge Hough accepted the version of the independent witnesses and since he saw all the witnesses in the case, except one who, being in hospital, was examined on deposition, we see no reason to reverse his findings as to the facts. Such being the situation he rightly found the White in fault for swinging four points to starboard across the bow of the Suffern. This swing we are satisfied took place when the boats were quite near each other, and produced the dangerous situation which naturally resulted in collision.

The decree is affirmed, with costs.